WALTERS *et al. v.* THOMPSON.

(Division B. May 5, 1930.)

[128 So. 81. No. 28661.]

C. C. Smith, of Richton, and W. S. Welch and Ellis B. Cooper, both of Laurel, for appellants.

Deavours & Hilbun, of Laurel, for appellants.

Collins & Collins, of Laurel, for appellee.

Argued orally by **Ellis B. Cooper**, and **Henry Hilbun**, for appellants.

**Ethridge, P. J.**, delivered the opinion of the court.

Thompson was plaintiff in the court below, and filed a suit against the appellants for damages for the loss of

an eye and suffering and expenses incident to such injury. He alleged that Bentley and Emery were residents of Perry county, and that he was employed by them on the 23d day of July and prior thereto in the logging business at Ovett in the First district of Jones county.; that they employed a large number of men, and that the plaintiff was employed to help banks logs upon the railroad track belonging to the defendants and used in its logging business; that, while so engaged in his business, the defendants owed him certain duties, among which was to furnish him a reasonably safe place in which to work and reasonably safe tools and appliances with which to work, which duty the defendants violated. He then alleged that on the 23rd day of July, 1928, while he was working for the said defendants, he was engaged in the business of driving a mule team for the defendants to bank or tong logs to be loaded on cars and manufactured into lumber, and that the defendants negligently and carelessly furnished him with a team of mules that were known by them to be wild and unruly and dangerous when engaged in such occupation, and that he was instructed by the defendants to take such team, and, because of the negligence of the defendants in knowingly, or by the exercise of reasonable care could have known, furnishing him an unsafe team, he was injured and damaged.

It was further alleged that it was the duty of the defendants to cut logs and timber in the words and to trim the limbs off of said timber and logs and clear them from all such limbs before they were hauled by the said plaintiff or dragged to the railroad; that defendants negligently and carelessly failed to perform this duty, and that they negligently and carelessly left the log, which plaintiff was ordered to remove to the railroad, which had limbs upon it; that the plaintiff hitched the said mules to the said log in the ordinary and usual way, and undertook to move said logs, and the mules moved the said logs, and, as the mules started, plaintiff discovered that there were limbs on said logs that had not been cut off, and that the same was dangerous, and he undertook

to stop the said mules as they were dragging the log, but, because of their wild and unruly nature, they refused to stop and kept on going at a rapid rate, and the limb on said log struck him in the eye and knocked his eye out.

The defendants each pleaded the general issue and gave notice of special matter under the general use. The defendants, Bentley and Emery, in their notice of special matter gave notice they would prove: (1) That the plaintiff was not injured on account of any negligence on the part of the defendants, or either of them, but because of his own gross negligence and carelessness. (2) That the plaintiff was not, either at the time of the happening of the accident mentioned in the declaration, or before said time or since said time, in the employ of these defendants or either of them; that the relationship of master and servant did not exist between the plaintiff and these defendants, or either of them, at the time of the happening of the accident sued on. (3) At the time plaintiff was injured he was the servant of the defendant A. F. Walters, who was at that time an independent contractor with these defendants; that some time during the year 1926 these defendants entered into an oral log hauling contract with the defendant A. F. Walters, which contract was in force and effect at the time plaintiff was injured; that said contract was oral, and was in substance that Walters agreed to haul all logs from where they had been felled; that was more than sixty feet from the railroad tracks of these defendants, and unload them along the tracks of these defendants where they could be loaded onto the logging cars by the steam loader; that Walters furnished his own teams, wagons, equipment, and employed, paid, and discharged his men; that the defendants scaled daily the logs so hauled by the defendant Walters, and at the end of each month these defendants would ascertain how many feet had been so hauled by the said defendant Walters, and would then give Walters a check in full for the amount so hauled, figured on a basis of so much per thousand feet, less any advances that may

have been made to Walters by the defendants; that the defendant Walters selected his servants, paid them, discharged them, and controlled and directed them, and that Bentley and Emery were not interested in the manner and method or in the details of the performance of the work, but only interested in the result thereof.

The defendant Walters gave notice under the general issue that the plaintiff was not injured through any negligence or carelessness of the defendant Walters, but was injured solely because of plaintiff's own gross carelessness and negligence; that his own gross carelessness and negligence contributed to the accident and injury for which said suit is brought.

It will not be necessary, nor will it serve any useful purpose, to set out the facts in detail. We have examined them, and think they are insufficient to sustain the verdict. The substance of the proof with reference to the safety of the mules is that they did not all the time stop when the word "whoa" was spoken by the driver, but sometimes went a few feet before stopping. It does not appear from the evidence that the mules were not properly equipped with reins or lines for stopping them or guiding them, or that the plaintiff had the lines in his hands and made any effort to stop them. There is proof that the plaintiff had been using the mules for several years, and it does not appear that he was not furnished proper equipment in the way of lines for the controlling of the movements of the mules in hauling logs. We cannot see that the failure of a mule team to stop on the word "whoa" being spoken necessarily renders it unsafe. Mules are usually controlled by means of reins, and, while they are frequently stopped by the utterance of the word "whoa," the failure of a mule to promptly stop does not necessarily render it unsafe for use in logging operations if the mule was otherwise safe, and it could be controlled by means of lines used in the customary manner.

We do not think it necessary to decide whether Walters was an independent contractor or not. Conceding, but

not deciding, that he was an employee, or servant, of the defendants Bentley and Emery, the proof is insufficient to sustain negligence upon this charge of the declaration. The mules appeared to be gentle and ordinary mules. One of the witnesses said that, while they were not perfect, he regarded them as ordinary mules, reasonably safe for the work for which they were used. We think the testimony is insufficient to show that they were unsafe, and it does not show that the plaintiff who was driving them, was making any effort to stop them with the lines, or that he could not have done so. It rather appears that he called ''whoa'' when he saw the limb, and that the injury was so quickly connected with the period in which the limb was seen that the injury probably would not have been avoided had the mules promptly stopped on hearing the command ''whoa.''

In reference to the allegation about the log being untrimmed, because the limb which occasioned the injury was not cut from the log, we think the proof is insufficient to show any negligence in regard thereto. The limb was on the underside of the log, and was not seen by the loggers who cut the log and trimmed it, and was not seen by the plaintiff until after the log had been pulled by the mules, at which time it turned in some manner so as to disclose the existence of this limb or branch of the tree. It is not the duty of the master to insure the safety of the place, but only to use reasonable care in providing a safe place. Conceding, but not deciding, that the master is under duty to furnish a safe place in which to work, under the circumstances disclosed in this record, where the logger is taking up logs in the forest and supposed to be familiar with their condition and the work being moved from place to place with operation, the plaintiff must, in order to recover, make out his case by sufficient evidence to show that the duties owing him by the defendant in the suit have been violated by the defendant. We have carefully examined the entire record in this case and reached the conclusion that the proof is insufficient

to sustain a verdict, and the peremptory instructions requested by all the defendants should have been granted. Reversed, and judgment here for the appellants.